No. 85-506

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

_____

IN THE MATTER OF THE ESTATE OF

CLAYTON FOGERTY, Deceased.

_____

APPEAL FROM: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Thomas Olson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Morrow, Sedivy & Bennett; Lyman H. Bennett, III,
Bozeman, Montana

For Respondent:

Richard Kalar, Emigrant, Montana

_____

Submitted on Briefs: Feb. 26, 1986

Decided: May 27, 1986

Filed: MAY 27 1986

_____
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Following the death of Clayton Fogerty (decedent), Anna Pratt filed a petition requesting adjudication of intestacy and appointment as personal representative. After bench trial, the Gallatin County District Court denied the petition. Anna Pratt appeals. We affirm.

The issues on appeal are:

1. Did the District Court err in holding the decedent's will had not been revoked?

2. Did the District Court err in naming Richard Kalar personal representative of decedent's estate?

Decedent died in January 1985. His will, which was dated June 14, 1984, was admitted to informal probate and Richard Kalar was appointed as personal representative, according to the terms of the will. The will contained a specific devise to Anna Pratt (petitioner) and named Church Universal and Triumphant residuary legatee:

> SECOND: I give, devise and bequeath unto Anna Pratt . . . [a] 1981 Fleetwood Mobile Home size 28x66 . . .[and] [a]ll the furniture, appliances and household goods . . .in the mobile [home] . . .
>
> THIRD: I give, devise and bequeath unto Church Universal and Triumphant . . .whatever cash on hand or money in the bank . . .I also give, devise and bequeath my present car or whatever car I might have to Church Universal and Triumphant, and all assets other than the Mobile and furnishings. . .

On the belief that this will had been revoked, Anna Pratt petitioned the court to declare decedent intestate and to appoint her as personal representative.

I

Did the District Court err in holding the decedent's will had not been revoked?

2

In the early part of January 1985, decedent had a heart attack in Bozeman. Initially, he was lucid and coherent. On January 14, 1985, after respiratory arrest, decedent was placed on a respirator and tubes were run down his throat. This limited his communication. He was not able to speak.

After being notified that decedent was in the hospital, Anna Pratt flew to Bozeman from Sacramento, California. Her testimony was essentially as follows: On January 15, 1985, during a period when Anna Pratt thought the decedent was awake and lucid, she asked decedent if he wanted to revoke his will. Anna Pratt testified that decedent moved his head in such a matter as to indicate "yes." She further testified that she called decedent's attending nurse, asked the same question and again received an affirmative nod of the head; and then tore up the will in front of the nurse and the decedent. Anna Pratt contends this was an adequate revocation of the will. Decedent died 10 days later.

The testimony of the attending doctor and nurse directly contradicted the testimony of Anna Pratt. The District Court concluded that the decedent did not have the capacity to make or direct voluntary destruction of his will, stating in part:

4. Mr. Fogerty was confined to the hospital having suffered multiple heart attacks and complications which eventually led to his death on January 25, 1985.

5. That nurse Kathleen Wilson was attending Clayton O. Fogerty as his personal nurse on January 15, 1985, continuously from 3:00 p.m. until after the petitioner left Mr. Fogerty's bedside.

. . .

8. At approximately 7:30 p.m. Mr. Fogerty momentarily opened his eyes whereupon Anna Pratt produced a duplicate copy of the will and held it before him. She attempted to ask Mr. Fogerty if he consented to the destruction of the will whereupon Mr. Fogerty's head moved in a slight manner. There is insufficient evidence to show that he in any way intended

3

that Anna Pratt destroy the will or that he was responding to any verbal statement by Anna Pratt.

9. Due to Mr. Fogerty's seriously ill condition he did not have the cognitive capacity to make a knowing and voluntary destruction of his will nor did he possess the capacity to direct the actions of Anna Pratt.

Nurse Kathleen Wilson, who cared for decedent while he was in the intensive care unit, testified with regard to the tearing up of the will as follows:

I was on the left side of his bed and I was occupied with handling medications or something . . . at his bedside. She told me that she was getting ready to leave; that she had to go ahead and go home for the evening. She bent over and like had Clayton's hand and she evidently had her purse with the folded copy of the will in the other hand. I could not see it at that time. She said, "Clayton, Clayton" and he opened his eyes for just very briefly and she said, "Is it all right with you if I tear up this up this will?" And she held up the little piece of paper, the folded paper, which I don't know if he saw or not. He kind of closed his eyes and nodded his head down at which point she tore up the paper. I was totally amazed.

Dr. Richard Tenney, decedent's attending physician, did not testify as to the actual tearing up of the will, as he was not personally present. However, he did testify with regard to the capacity of the decedent, as follows:

Again, I go back to what I said, that even though they have a lucent [sic] point during which, say, I examine them in the morning and I say, "How are you?" And he shakes his head . . . they're so critically ill that I'm not totally sure when you ask them for a yes or no answer, whether you ask them to shake yes or no, up and down or whatever, that they're actually aware of what they're saying. They may be giving you an answer just to get you off their back because they're so weak. If I have to say yes or no, are you going to ask me: Can they make good decisions while they're patients like this, I say no, but there may be a point where they're asked a specific question where they may be lucid at that time, but categorically speaking, these people are not capable of making good decisions.

After a careful examination of the transcript, we conclude there is both substantial and compelling evidence that

4

decedent did not have the capacity to revoke his will. We affirm the holding of the District Court that the decedent's will had not been revoked, and the will was properly admitted to probate.

II

Did the District Court err in naming Richard Kalar personal representative of the decedent's estate?

Petitioner contends Mr. Kalar should be removed as personal representative because he failed to post a bond, violating § 72-3-514, MCA.

On May 20, 1985, the day of trial, on the basis that Mr. Kalar had not received notice of the demand to post bond, the motion to remove Mr. Kalar was denied. The transcript discloses the following conversation:

> THE COURT: [D]id you serve any of these papers on Mr. Kalar?
> MR. BENNETT: I requested the Clerk of Court to do so, your Honor. I did not do it personally.
> THE COURT: Have you reviewed the file to see if the Clerk did that?
> MR. BENNETT: No. I haven't, your Honor.
> MR. KALAR: I see the demand in the file, sir, but I never received a copy of this.
> . . .
> THE COURT: The motion will be denied at this time on the basis that there's no showing that service has been made upon the personal representative.

We find no abuse of discretion.

Petitioner now asks the Court to remove Mr. Kalar because he still has not posted a bond, even after receiving actual notice on the day of trial. The District Court is the proper forum for this issue that arises out of subsequent facts and circumstances not presently before this Court on appeal.

We affirm.

5

_____
                    Justice

We concur:

_____
Chief Justice

_____

_____

_____
            Justices

6